ordered to cease work and the note was then given in settlement of a balance found by the supervisors to be due him to that date. Even though the contract was not fully completed, the supervisors had the right, under the circumstances and in absence of fraud, to make compensation for work already done and a note given for that purpose cannot be subsequently defeated by alleging want of consideration. The action of the court in excluding the evidence offered was not error.

The judgment is affirmed.

---

# Poland Coal Company v. Rogers et al., Appellants.

*Contracts—Construction—Sale of coke—Amount—Approximate total—Deliveries—Performance—Partial performance—Set-off.*

Plaintiff agreed to deliver to defendants coke for a year for their "entire consumptive requirements, estimated at forty thousand (40,000) tons shipment in approximately equal monthly installments over the period below specified." The contract further provided, "Each month's deliveries to be treated and considered as a separate and independent contract." Plaintiff delivered coke during part of the term of the contract, but later delivered an amount less than 3,333 1-3 tons each month. In an action for the price, the court directed the jury to give credit to the defendants against the claim of the plaintiff for coke purchased to make up such monthly deficiency. Defendants claimed further credit for coke demanded and not furnished over and above the approximate amount of 3,333 1-3 tons each month. *Held,* (1) that the direction to the jury to allow credit for loss in purchasing coke to make up the deficiencies was correct; (2) Defendant was not entitled to demand deliveries in excess of 3,333 1-3 tons a month.

Argued Oct. 16, 1917. Appeal, No. 162, Oct. T., 1917, by defendants, from judgment of C. P. Allegheny Co., Oct. T., 1916, No. 598, on verdict for plaintiff in case of Poland Coal Company v. William A. Rogers, M. C. Armour, E. L. Billingslea, D. B. Meacham, A. F. Fowler, W. T. Shepard and J. K. Pollock, Partners, Doing Business as Rogers, Brown & Company. Before BROWN, C.

J., Potter, Moschzisker, Frazer and Walling, JJ. Affirmed.

Assumpsit on written contract for the sale of coke.

The facts appear from the following opinion by Davis, J.:

The plaintiff brings this action to recover the amount alleged to be due from the defendants for the delivery of coke according to the terms of a written contract. Its brevity is the reason for quoting the entire contract, viz:

"Pittsburgh, Pa., July 7, 1915.

I. Party of First Part:
        Poland Coal Company of Pittsburgh, Pennsylvania,
        Agreeing to sell

II. Party of Second Part:
        Rogers, Brown & Company of Pittsburgh, Pennsylvania,
        Agreeing to buy for Columbia Chemical Company of Barberton, Ohio.

III. Quantity:
        Entire consumptive requirements, estimated at forty thousand (40,000) tons for shipment in approximately equal monthly installments over the period below specified.

IV. Quality:
        48 Hour Furnace Coke.
        Guaranteed to average twelve per cent. or under in cash.

V. Delivery:
        F. O. B. cars at ovens of party of the first part.

VI. Duration of Contract:
        From date of June 30th, 1916.

VII. Weights:
        Railroad scale weights nearest to point of shipment to govern settlement.

VIII. PRICE:

One Dollar and thirty-seven and one-half cents
($1.37½) per net ton.

IX. TERMS:

Cash on the 20th of each month for all ship-
ments made the month preceding.

X. CONDITIONS:

Party of the first part not to be held in dam-
ages for failure to make shipments, as aforesaid,
on account of shortage, railroad delays, strikes,
trouble with workmen, accidents, or other causes
beyond its control. Each month's deliveries to be
treated and considered as a separate and inde-
pendent contract.

Made and entered into the date first above written, as
witness our hands.

POLAND COAL COMPANY,

G. W. FORNEY,

Sales Manager.

ROGERS, BROWN & COMPANY.

Signed in Duplicate.

The facts are admitted or undisputed, and both plain-
tiff and defendants presented points for binding instruc-
tions. The plaintiff's point was partly affirmed, the de-
fendants' point refused, followed by this rule for judg-
ment non obstante veredicto.

The question involved turns upon the interpretation
to be placed on the following clause of the said contract,
viz:

"Quantity: Entire consumptive requirements, esti-
mated at forty thousand (40,000) tons for shipment in
approximately equal monthly installments over the
period below specified." This clause to be considered in
connection with another clause of the contract which
provides that, "each month's deliveries to be treated and
considered as a separate and independent contract."

The contract and evidence further show that the con-

tract is made with the defendants as brokers and not with the consumer of the coke, and there is no evidence that the plaintiff had any knowledge of the consumptive requirements of the customer either yearly or monthly at the time of the signing of the contract except as estimated.

The plaintiff delivered coke and paid each month without any dispute until the month of November, 1916. During the subsequent months of the contract term the plaintiff fell short in its delivery of coke 2,872.80 tons below the approximate amount of 3,333 1-3 tons specified for each month. For this shortage the jury was directed to give credit to the defendants against the claim of the plaintiff for coke purchased to make up the deficiency. The defendants, however, claim a further credit for coke demanded and not furnished and purchased over and above the approximate amount of 3,-333 1-3 tons each month. As an example, in the month of November, plaintiff delivered 3,514.45 tons; defendants now demand credit for an additional 791.15 tons purchased. Also for the month of January, 1916, plaintiff delivered 2,166.95 tons; defendants now demand credit for an additional 2,876.45 tons, or a consumptive requirement for the month of January of 5,-043.40 tons, or 1,710.07 tons over and above the approximate monthly requirements.

The counsel for the defendants have cited a number of cases which, in principle they contend control the case at bar, viz: Brawley v. U. S., 96 U. S. 168; Marx v. American Malting Co., 169 Fed. 582 (6th Circuit); Smoot v. U. S., 237 U. S. 38; Wolff v. Wells Fargo & Co., 115 Fed. Rep. 32; McKeever, Cook & Co. v. Canonsburg Iron Co., 138 Pa. 184; Willock v. Crescent Oil Co., 184 Pa. 245; Tancred, Arrol & Co. v. The Steel Co. of Scotland, Ltd., 15 Law Reps. 1890 App. Cases 125.

An examination of the cases cited shows that either the quantity was fixed and then qualified by the words "more or less," or that the amount required was to be

furnished and then an estimated amount given or that the seller knew the quantity required or had knowledge of the probable quantity to be required.

In the case at bar we have the first stipulation, quantity "entire consumptive requirements (for the year), estimated at forty thousand (40,000) tons," and then that the amount shall be divided into twelve separate and independent contracts, and that the plaintiff should deliver "in approximately equal monthly installments over the period below specified"; that, is, the seller is required to deliver approximately 3,333 1-3 tons each month during the period of the yearly contract.

In the sense used, the word "approximately" modifies and limits the quantity to be furnished each month to 3,333 1-3 tons, or some quantity near that amount, but which could not at the time of signing the contract be accurately ascertained.

Taking into consideration that each month's delivery was to be treated and considered as a separate and independent contract, we cannot agree with the construction placed upon the contract by the defendants that the plaintiff was required to anticipate and provide quantities greatly in excess of the approximate stipulated amount required to be delivered each month under the terms of the contract. In effect, the plaintiff would unexpectedly be called upon in any given month to furnish any quantity of coke only limited by the full running capacity of the plant of the consumer.

We are of the opinion that the contract does not require the plaintiff to anticipate and provide for such an indefinite monthly delivery of coke.

Verdict for plaintiff for $1,511.39 and judgment thereon. Defendants appealed.

*Error assigned*, among others, was in refusing defendants' motion for judgment non obstante veredicto.

*W. D. N. Rogers*, of *Richardson & Rogers*, with him *O. S. Richardson*, for appellants.

*George D. Howell,* with him *F. C. Houston,* for appellee.

PER CURIAM, January 7, 1918:

This judgment is affirmed on the opinion of the learned court below discharging the rule for judgment non obstante veredicto.

---

## McKinney's Estate.

*Wills—Construction—Trusts—Equitable life interest — Contingent legal remainderman—Rule in Shelley's Case—Trustees—Accountability—Commissions—Sale of real estate—Agent's commission.*

1. Where a will creates an equitable life estate followed by legal contingent remainders, the rule in Shelley's Case is not applicable.

2. Testatrix by will provided, "It is my will that all my property ......of which I shall die possessed......may remain intact and the income therefrom be used for the benefit of my children," and then appointed her husband trustee of the estate and guardian of the children. The will further provided, "When all the children are deceased, the estate is to be divided equally among their heirs. Should any child die without issue, the portion of such child shall be divided equally between the direct heirs of the other children." In case of the death of all the children without issue the will provided for a gift over. Testatrix's husband and seven children, all minors, survived her and five thereafter reached their majority. Thereafter the husband died, but prior to his death he declined to act as trustee and assigned his interest in the estate to his children. A trust company was appointed trustee. *Held,* (1) the trust estate created by the testatrix for her children was active and they had equitable life estates, and (2) the estates of the contingent remaindermen were legal and the rule in Shelley's Case did not apply.

3. In such case where the trustee in a first and partial account filed after some of the cestuis que trustent had attained their majority, claimed credit for two per cent. commissions paid by it to the agent who negotiated the sale of real estate subject to the trust, and no exception was taken to such credit at the time, and the court confirmed such action, such question was res judicata as to the cestui trustent who were then sui juris, and would not be reopened at the instance of a cestui que trust who was then a minor, where